## Connecticut Fire Insurance Company v. Smith.

(Decided October 11, 1918.)

### Appeal from Madison Circuit Court.

Insurance—Owner of Property Divested of Title.—Where the owner of a barn insured it against loss by fire, and the owner was subsequently divested of title by proceedings in chancery which resulted in a sale and conveyance of the insured property to the purchaser, and subsequent thereto the barn was destroyed by fire, the former owner of the barn cannot recover for the loss.

G. MURRAY SMITH for appellant.

CHENAULT & WALLACE for appellee.

OPINION OF THE COURT BY JUDGE MILER—Reversing.

In January, 1912, C. W. White contracted to sell and convey a tract of land containing 32 acres to the appellee, David M. Smith, but as J. G. Baxter furnished most of the purchase money, by agreement, White conveyed the land directly to Baxter and his wife, Hattie Baxter. By a writing dated May 17th, 1913, J. G. Baxter and David Smith agreed that although Baxter and wife held the legal title to the land, it was really so held only for the purpose of securing to Baxter and wife the payment of $1,250.00 which they had supplied toward the purchase money, and that if Smith should repay said amount to the Baxters on or before January 1st, 1914, they agreed to convey the land to Smith.

Smith having failed to pay his debt within the time specified, the Baxters instituted an action on September 17th, 1914, to enforce their lien—treating the deed from White as a mortgage only. By his answer filed in that action on September 17th, 1914, Smith admitted the debt and the allegations of the petition as to the nature of the Baxter title, and conceded their lien upon the land to secure the payment of their debt of $1,250.00, with interest. On October 8th, 1914, a judgment was entered enforcing the Baxter lien and directing a sale of the land to pay their debt.

On October 30th, 1914—about three weeks after the judgment enforcing the Baxter lien was entered—Smith insured a barn located upon the land in question in the Connecticut Fire Insurance Company, against loss by fire, for $500.00.

On February 6th, 1915, the commissioner sold the land pursuant to the judgment, and Smith became the purchaser at $1,560.00; but he immediately transferred his bid to W. H. Douglas, who was reported to be the purchaser. On February 10th, 1915, the report of sale was confirmed, and on October 26th of that year the commissioner executed to Douglas a deed conveying the land to him. In the meantime Douglas had insured the property, for his own protection, in the American Insurance Company. On December 10th, 1915, precisely ten months after the report of sale had been confirmed, and about six weeks after the commissioner had conveyed the property to Douglas, the barn was destroyed by fire. It is alleged and shown by the proof that Douglas compro-

mised his loss with the American Insurance Company for $250.00.

On September 7th, 1916, Smith instituted this action against the Connecticut Fire Insurance Company to recover for the loss of the barn. The company resisted payment upon three grounds; (1) that at the time of the application for the insurance Smith did not have the sole and unconditional ownership of the land on which the barn was located; (2) that in his application Smith failed to advise the company of the pendency of the foreclosure proceedings by Baxter; and (3) that at the time of the loss Smith had no interest in the property insured.

The case was tried by the court without the intervention of a jury, and judgment having been entered for the plaintiff for the sum of $500.00, the amount fixed by the policy, the company prosecutes this appeal.

We have not been favored with a brief for the appellee, and as the court delivered no written opinion, we are not advised as to the ground upon which it rested its judgment.

The policy contained this clause:

"This indemnity contract is based upon the representations contained in the application of even number herewith and which the assured has signed and permitted to be submitted to the company, and which is made a warranty and a part hereof; and it is stipulated and agreed that if any false statements are made in said application or if the assured shall now have or hereafter make or procure any other contract of insurance, whether valid or not, or upon the commencement of foreclosure proceedings, or in case any change shall take place in the title or possession (except by succession by reason of the death of the assured of the property herein named) or if the interest of the assured be other that unconditional, unencumbered and sole ownership, or if this policy shall be assigned, or if the property herein named, or any part thereof, shall hereafter be or become mortgaged or encumbered, then in each and every one of the above cases, this entire policy shall be null and void unless otherwise provided by agreement endorsed hereon."

The application contains the following questions and answers

"5. TITLE. Have you a warranty deed to the land herein described and referred to? Yes.

"6. ENCUMBRANCES. Is the land encumbered? Yes. If so, what amount? $1,000.00. When due? 1, 2 and 3 years. Is the personal property encumbered? No. If so, what amount? No. When due? No. Have there been any proceedings for forclosure?_____ _____"

It will be observed that Smith failed to say whether any foreclosure proceedings on his property had existed or were then pending, although the judgment enforcing the Baxter lien had theretofore been entered. Marksbury, the agent who took the insurance for the company, stated that he had asked Smith if there were any foreclosure proceedings against the land, and that Smith said there were not, but that there was a mortgage due upon the property for $1,000.00, when in fact Baxter's mortgage was for $1,250.00. Marksbury is of the opinion that he failed to write the answer relating to the existence of foreclosure proceedings, through inadvertence. And, upon cross-examination Marksbury qualified his statement somewhat as to the question relating to the existence of foreclosure proceedings by saying that he always asked that question of the assured, and did so in this instance, to the best of his recollection. But whatever may be the fact as to the representation made by Smith as to his ownership of the property, or the existence of foreclosure proceedings against it, at the time he made the application, there can be no doubt whatever that he had parted with his entire title before the barn was burned.

So, disregarding the defenses made upon the ground of misrepresentation as to title and ownership at the time the policy was issued, or the suppression of the pendency of the foreclosure suit, it is sufficient to say that as Smith had no title to the barn at the time it was burned, he could not have sustained any loss by reason of its destruction. As the land and barn had been sold and the proceeds applied to the payment of Smith's debt, the case is the same as it would have been if he had sold his farm and put the money in his pocket. In neither case would he have sustained any loss; and, as loss is the essential basis of a recovery, the judgment should have gone for the defendant.

Judgment reversed.